2023 IL App (1st) 220128-U

No. 1-22-0128

Order filed June 15, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 93 CR 03615 |
| FRAZIER CROCKETT, | ) ) | Honorable Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of the trial court summarily dismissing defendant's first-stage petition for post-conviction relief is reversed.

¶ 2    This appeal arises out of the December 21, 2021, summary dismissal of defendant Frazier Crockett's October 28, 2021, petition for post-conviction relief. Invoking *Miller v. Alabama*, 567 U.S. 460 (2012), defendant claimed that his mandatory natural life sentence for first degree murder violated the Eighth Amendment of the United States Constitution and the Proportionate Penalties

Clause of the Illinois Constitution. The trial court held that his petition was frivolous and patently without merit.

¶ 3     For the reasons that follow, we reverse the judgment of the circuit court.[1]

¶ 4                              I. BACKGROUND

¶ 5     Defendant was convicted of two counts of first degree murder and armed robbery on June 27, 1996. He received a sentence of mandatory natural life without parole on the murder charges, and 30 years incarceration for the two counts of armed robbery. On direct appeal, pursuant to *Batson v. Kentucky*, we remanded with instructions to the trial court to determine why the State excused a potential juror. After the trial court determined that the State had supplied a race-neutral reason for excusing the juror, defendant appealed again. We then affirmed.

¶ 6     Because we already summarized the evidence from defendant's trial in his direct appeal, we will reference only that which is pertinent to this appeal. *See People v. Crockett*, 314 Ill. App. 3d 389 (2000).

¶ 7     James Swansey and defendant were both charged with the murders of Javier Guzman and Jorge Torres in September of 1992. Following his arrest, defendant gave a statement to an assistant State's Attorney on January 25, 1993. Defendant stated that he and Swansey were near the intersection of Pratt and Clark in Chicago, Illinois, when they saw Guzman and Torres turn down an alleyway. Defendant and Swansey followed, and after Guzman and Torres looked at the defendants, Swansey approached the two while brandishing a gun.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 8    Swansey ordered Guzman and Torres to lie down and he asked them if they had any money. The victims replied that they did not. Swansey heard a noise around the corner and went to investigate, leaving the gun with defendant. Swansey's search of the victims yielded no money, but defendant performed his own search and found money in one of their pockets. He then said to Swansey, "I hate people lying to me," and "we should pop them." Swansey agreed and shot Torres and Guzman in the back of the head.

¶ 9    After the killings, defendant, his girlfriend, Porsha Jenkins, Swansey, and another man discussed a newspaper article about the killings. Defendant later told Jenkins that he and Swansey had robbed the two men and that Swansey shot them. After defendant was arrested, Jenkins went to the police and repeated what defendant told her.

¶ 10    Defendant was subsequently found guilty of two counts of first degree murder and two counts of armed robbery.[2] At sentencing, the trial court stated that it had considered the presentence investigation (PSI), the evidence in aggravation and mitigation, and its notes from the trial, though it did not elaborate on any of these factors. Defendant presented no evidence in mitigation and offered no statement in allocution. The State's request to sentence defendant to death was rejected, and the trial court sentenced defendant to the only other available sentence: life in prison.

¶ 11    On October 28, 2021, defendant filed a document titled, "Motion for Leave to File Successive Post-Conviction Petition" and attached the petition at issue in this case that was captioned as a "Successive Post-Conviction Petition." Defendant's motion claimed that he filed an

---

[2] Defendant was also convicted of first degree murder in an unrelated case numbered 93 CR 03617, for which he is also serving a life sentence.

initial petition for post-conviction relief on May 23, 2000, and that it was denied on July 18, 2000. The docket entries for this case do not reflect that such a petition was ever filed or ruled upon, and the parties agree that defendant's petition was properly treated as if it was his first petition.

¶ 12    Defendant's petition, invoking *Miller v. Alabama*, claimed that his sentence of life without parole violates the Proportionate Penalties Clause of the Illinois Constitution and the Eighth Amendment of the United States Constitution. Defendant claimed that "newly discovered evidence" concerning the brain development of young adults, combined with the trial court's failure to consider his youth and other attendant circumstances warrants resentencing. He attached an October 2, 2015, article from The Washington Post titled, "Why 21 year-old offenders should be tried in family court." That article asserted that neurobiology and developmental psychology research now shows that the brain does not finish developing until the mid-20s, "far later than previously thought," and that, "[y]oung adults are more similar to adolescents than fully mature adults in important ways. They are more susceptible to peer pressure, less future-oriented, and more volatile in emotionally charged settings."

¶ 13    On December 21, 2021, the trial court summarily dismissed defendant's petition as being frivolous and patently without merit. Defendant filed a Notice of Appeal on January 19, 2022, and this appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    The Post-Conviction Hearing Act (the Act) provides a mechanism by which a defendant may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq.* The purpose of post-conviction proceedings

is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on appeal. *People v. Buffer*, 2019 IL 122327, ¶ 12. Review of the trial court's dismissal of a post-conviction petition is *de novo*, meaning we afford no deference to the trial court's decision. *Buffer*, 2019 IL 122327, ¶ 12; *People v. Randall*, 2016 IL App (1st) 143371, ¶ 44.

¶ 16     The Act sets out a three-stage process for the adjudication of post-conviction petitions. *Id*. at ¶ 45. At the first stage, the stage pertinent to this case, the trial court is only required to determine whether a petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2); *Buffer*, 2019 IL 122327 at ¶ 45. A petition is frivolous or patently without merit when it has no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id*. An example of an indisputably meritless legal theory is one which is completely contradicted by the record. *Id*. Fanciful factual allegations include those which are fantastic or delusional. *Id*. at 17.

¶ 17     A first-stage petition does not have to demonstrate or prove a constitutional violation. *People v. Tate*, 2012 IL 112214, ¶ 19. A *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48. Because a *pro se* petitioner will likely be unaware of the precise legal basis for his claim, the threshold for survival is low, and a *pro se* petitioner need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id*. However, the petition must clearly set forth the respects in which petitioner's constitutional rights were violated. *Id*. Petitions filed

*pro se* must be given a liberal construction and are to be viewed with a lenient eye, allowing borderline cases to proceed. *Id*. But liberal construction does not mean that we distort reality. *Id.*

¶ 18    Defendant has argued that he stated the gist of a constitutional claim that his life sentence violates both the Eighth Amendment and the Proportionate Penalties Clause. We address in turn whether either claim satisfies the pleading requirements of a first stage petition.

¶ 19                         A. *Miller* and the Eighth Amendment

¶ 20    Although defendant's petition focuses largely on the interplay between *Miller v. Alabama* and the Proportionate Penalties Clause, it does also invoke the Eighth Amendment. In the interest of construing his petition liberally, we first address the merit of any Eighth Amendment claim and hold that defendant failed to state the gist of a constitutional claim in this regard.

¶ 21    The Eighth Amendment's prohibition against cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (*quoting Roper v. Simmons*, 543 U.S. 551, 560 (2005)). That right "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Miller*, 567 U.S. at 469 (*quoting Weems v. United States*, 217 U.S. 349, 367 (1910)). "The concept of proportionality is central to the Eighth Amendment." *Miller*, 567 U.S. at 469 (*quoting Graham v. Florida*, 560 U.S. 48, 59 (2010)). That concept is viewed "less through a historical prism than according to the evolving standards of decency that mark the progress of a maturing society." *Miller*, 567 U.S. at 469.

¶ 22    Though we need not recite the entire rationale of *Miller*, it suffices to say that *Miller* held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders, in part because "developments in psychology and brain

science continue to show fundamental differences between juvenile and adult minds." *Miller*, 567 U.S. at 471-72, 479. The cases that preceded *Miller* also drew a clear line at the age of 18. *Roper*, 543 U.S. at 574; *Graham*, 560 U.S. at 74-75 (*citing Roper*, 543 U.S. at 574).

¶ 23    The Illinois Supreme Court has also recognized this clear dividing line. In *People v. Harris*, the defendant was convicted of a first degree murder that took place when he was just over the age of 18. *People v. Harris*, 2018 IL 121932, ¶ 1. The Court held that relief pursuant to *Miller* and the Eighth Amendment was unavailable because the defendant fell on the adult side of the dividing line established by *Miller*, *Roper*, and *Graham*. *Harris*, 2018 IL 121932, ¶ 61.

¶ 24    The wisdom of such a categorical rule is not for us to decide. It is enough that the rule exists. Because the Eighth Amendment draws a line at the age of 18, defendant's claim that his sentence violates the Eighth Amendment lacks an arguable basis in law and the claim is therefore frivolous and without merit.

¶ 25                              B. Proportionate Penalties Clause

¶ 26    Defendant also argues in his petition that his mandatory natural life sentence violates the Proportionate Penalties Clause of the Illinois Constitution. With this argument, defendant has stated the gist of a constitutional claim. We subdivide this issue into whether defendant has provided both a legal and factual basis for his claim.

¶ 27                              1. The Legal Basis

¶ 28    The Proportionate Penalties Clause states that, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The Eighth Amendment and the Proportionate Penalties Clause are not "mirror images" of each other. *People v. Clemons*, 2012 IL 107821, ¶ 36. The

Proportionate Penalties Clause explicitly references the objective of rehabilitation, and that objective went beyond the framers' understanding of the Eighth Amendment. *Id*. at ¶ 40. "[T]he framers intended, with this additional language, to provide a limitation on penalties beyond those afforded by the Eighth Amendment." *Id*. at ¶ 39. The Eighth Amendment and the Proportionate Penalties Clause are not in lockstep, and the Illinois Constitution provides greater restrictions on criminal sentencing than the Eighth Amendment. *People v. Savage*, 2020 IL App (1st) 173135, ¶ 65.

¶ 29     Although *Harris* acknowledged that individuals aged 18 or older cannot invoke *Miller* in an Eighth Amendment context, it left open the possibility of an adult invoking *Miller* in the context of the Proportionate Penalties Clause, specifically if a defendant could establish that the evolving science on juvenile maturity and brain development that formed the basis of *Miller* applied to the defendant's specific facts and circumstances. *Harris*, 2018 IL 121932 at ¶¶ 45-48.

¶ 30     Since *Harris*, as defendant notes, a number of courts have reversed for second-stage proceedings based on this issue. *See e.g. Savage*, 2020 IL App (1st) 173135 at ¶¶ 7, 76 (22-year-old defendant) and *People v. Chambers*, 2021 IL App (4th) 190151, ¶¶ 45, 81 (18-year-old defendant). The State responds by citing *People v. Guerrero*, which asserts that *Savage* is the only case "of this court extending *Miller*-based protections [citation omitted] to a defendant over 21 years of age." *People v. Guerrero*, 2022 IL App (1st) 210400, ¶ 29 (collecting cases that have rejected *Savage*).

¶ 31     First, we think it inaccurate to say that *Savage* unequivocally extended *Miller*-based protections to a defendant over 21. *Savage* only reversed on the basis that the defendant had shown the gist of a constitutional claim. *Savage*, 2020 IL App (1st) 173135 at ¶ 76. Whether *Miller*

ultimately applied to him depends entirely on the specific factual circumstances and whether the defendant could prove that *Miller* should apply to him. It is more accurate to say that *Savage* merely acknowledged the possibility that *Miller* could apply to someone over the age of 21. *Savage*, 2020 IL App (1st) 173135, ¶¶ 70-76. Or, in post-conviction parlance, that it is arguable that *Miller* can apply to someone over the age of 21. Indeed, even by *Guerrero*'s own logic, that assertion is not controversial. *Guerrero* itself acknowledged that "research has found that brain development can continue into a person's mid-twenties, and we really do not know what effect, if any, that has on an offender's reasoning process." *Guerrero*, 2022 IL App (1st) 210400, ¶ 30. It also recognized that our Supreme Court has not proscribed a maximum age for *Miller*-based claims under the Proportionate Penalties Clause. *Id*. at ¶ 31.

¶ 32      Second, while *Savage* held that the defendant, who was over the age of 21, presented the gist of a constitutional claim, courts have distinguished a number of other cases from *Savage*, as the State has pointed out. *See e.g. People v. Montanez*, 2022 IL App (1st) 191930 *and People v. Kruger*, 2021 IL App (4th) 190687. Many of these examples cited by the State, however, involved successive petitions, where the cause-and-prejudice test is much more demanding than the frivolous or patently without merit standard for first-stage petitions. *People v. Smith*, 2014 IL 115946, ¶ 35; 725 ILCS 5/122-2.1(a)(2). We are dealing with a first-stage petition where defendant must only present an arguable claim. The fact that we or other courts have distinguished *Savage* or rejected it is of little consequence. If this is an area where there is ongoing debate, then it remains an issue of law that is arguable. Our supreme court opened the door for young adults to invoke *Miller* under the Proportionate Penalties Clause, and it has not closed that door or explicitly limited

it to a particular age range. *Harris*, 2018 IL 121932, ¶¶ 45-48; *People v. House*, 2021 IL 125124, ¶¶ 31-32.

¶ 33    Not setting a specific age limit makes sense because, in the world of as-applied challenges, the burden will fall to defendants at a third-stage evidentiary hearing, or at a sentencing hearing, to establish, by way of their own unique circumstances and development, whether the rationale of *Miller* would encompass their maturity and development at the time of the offense.

¶ 34    Holding that this is not an issue with arguable legal merit would bring us face to face with the same dilemma that *Chambers* faced when reviewing a first-stage summary dismissal of a post-conviction petition. *Chambers* acknowledged that there were arguments to be made in favor of summary dismissal, and arguments to be made against summary dismissal. *Chambers*, 2021 IL App (4th) 190151, ¶ 81. But it ultimately concluded that the defendant had stated an arguable constitutional claim. *Id*. It reasoned that reaching the opposite conclusion, that the defendant's claim was not arguable, would require the untenable holding that the precedent upon which the defendant's claim relied was also unarguable. *Id*.

¶ 35    To say that defendant's legal claim here is not arguable would be to say that *Savage*'s holding is not arguable. *Savage*, 2020 IL App (1st) 173135, ¶¶ 62-76. That is not something we can do. Accordingly, defendant provided an arguable legal basis for his claim.

¶ 36                                    2. The Factual Basis

¶ 37 Defendant here did not include allegations specific to him and his brain development or maturity at the time of the offenses. Nevertheless, he still provided a sufficient factual basis to satisfy the extremely undemanding standard at the first stage. To be summarily dismissed at the first stage as frivolous or patently without merit, the petition must have no arguable basis either in

law or in fact, relying instead on an indisputably meritless legal theory or a fanciful factual allegation. *People v. Boykins*, 2017 IL 121365, ¶ 9. To attain the very low threshold necessary for advancement to the second stage, a defendant "need not set forth a claim in its entirety," and must only "present a limited amount of detail." *People v. Edwards*, 197 Ill. 2d 239, 244 (2001); *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 29 (*quoting Edwards*, 197 Ill. 2d at 244).

¶ 38     This case presents us with the following facts. Defendant was 21 years old at the time of the offenses in 1993. He received a mandatory natural life sentence without parole for his participation in the killings in this case. Though he was certainly an active participant—he robbed the victims and he encouraged Swansey to shoot them—he did not pull the trigger. His petition attached an October 2, 2015, article from The Washington Post which claims current neurobiology research shows that our brains do not finish developing until the mid-20's, and that young adults are "more similar to adolescents than fully mature adults in important ways," such as they are more susceptible to peer-pressure, less future-oriented, and more volatile in emotionally charged settings.

¶ 39     Although defendant did not specifically allege that his brain was not finished developing at the age of 21, or that he was less future-oriented and more volatile in emotionally charged situations because his brain was not finished developing at age 21, that seems to be the sort of overly formalistic legal precision that we do not require at the first stage. Requiring defendant to plead with that sort of specificity is at odds with the "gist" standard because, by definition, a "gist" of a claim is "something less than a completely pled or fully stated claim." *Edwards*, 197 Ill. 2d at 245; *Zumot*, 2021 IL App (1st) 191743, ¶ 29 (*quoting Edwards*, 197 Ill. 2d at 245). The broad allegations about brain development clearly are meant to encompass defendant and seem like

reasonable factual allegations to serve as a starting point. It would be unreasonable to expect defendant to connect the existing research to himself through specific allegations because, while a *pro se* defendant may be aware of the facts pertaining to his claim, he will likely "be unaware of the precise legal basis for his claim or legal elements of that claim." *Edwards*, 197 Ill. 2d at 245; *Zumot*, 2021 IL App (1st) 191743, 29 (*quoting Edwards*, 197 Ill. 2d at 245). Indeed, in many cases, a *pro se* defendant will be "unaware that certain facts, which in his mind are tangential or secondary, are, in fact, critical parts of a complete or valid constitutional claim." *Edwards*, 197 Ill. 2d at 245; *Zumot*, 2021 IL App (1st) 191743, 29 (*quoting Edwards*, 197 Ill. 2d at 245). Obviously, at an evidentiary hearing, defendant would have to prove that the science on juvenile maturity and brain development applied to defendant's circumstances at the time of the offense in order to justify a new sentencing hearing. *Harris*, 2018 IL 121932, ¶¶ 45-48.

¶ 40 Additionally, the record, which the Act instructs us to review, reflects that defendant has struggled with alcohol and substance abuse since he was a teenager, and that he received inpatient treatment for these issues in 1986 at age 16. 725 ILCS 5/122-2.1(c). As a teenager, defendant consumed alcohol and smoked marijuana laced with PCP on a daily basis. Although he made no specific factual allegations related to his drug use in his petition like the defendant in *Savage*, literature supports the proposition that teenage alcohol and drug abuse can negatively impact decision making and arrest cognitive and social-emotional development. *See* Richard C. Boldt, Adolescent Decision Making: Legal Issues with Respect to Treatment for Substance Misuse and Mental Illness, 15 J. Health Care Law and Pol'y 75, 87 (2012); *Savage*, 2020 IL App (1st) 173135, ¶ 7. Again, this would seem to be insisting on an overly formalistic and unrealistic pleading requirement that was rejected long ago. *Edwards*, 197 Ill. 2d at 245 (rejecting first-stage test that

would have required defendants to file a factually complete petition that would support all elements of the claim).

¶ 41    Furthermore, at the age of 17 in 1987, defendant committed the offenses of armed robbery and aggravated battery for which he received a sentence of 8 years in the Illinois Department of Corrections (IDOC). The PSI reflects that defendant's parents separated when he was an infant, and he was raised primarily by his mother. Although defendant stated his mother provided a stable home for him, and that he maintained a good relationship with his father, the PSI also reflects that he dropped out of high school after the tenth grade before obtaining his General Equivalency Diploma while incarcerated in 1989. Defendant joined a gang when he was 11 years old.

¶ 42    Other than *Savage*, one case that must be addressed is *People v. Williams*, 2021 IL App (1st) 190535, which was cited by the State. There, this court affirmed a summary dismissal of an initial petition in a factually similar case where the defendant invoked *Miller* and the Proportionate Penalties Clause, and included facts about generic studies, but failed to allege specific facts about his own maturity and development. *Williams*, 2021 IL App (1st) 190535, ¶¶ 33, 39. That decision cannot be followed because we believe the reasoning behind that decision is incorrect.

¶ 43    *Williams* held that defendant's reliance on studies that show brain development continues into the mid-20s was insufficient to state the gist of a claim because our supreme court had drawn a line at age 18, and "our supreme court recognized that a line must be drawn between adults and juveniles for sentencing purposes, and that line is 'not based primarily on scientific research.'" *Id.* at ¶ 33 (*quoting Harris*, 2018 IL 121932, ¶ 60). But the portion of *Harris* to which *Williams* cited was discussing age limits for *Miller* in the context of the Eighth Amendment. *Harris*, 2018 IL 121932, ¶¶ 50-61. It appears that *Williams* incorrectly conflated the age limits our supreme court

has recognized for Eighth Amendment *Miller* claims with Proportionate Penalties Clause *Miller* claims. *Williams*, 2021 IL App (1st) 190535, ¶¶ 33.

¶ 44    Moreover, requiring more specific factual allegations is contrary to the well-established principles we have already recited. *See Edwards*, 197 Ill.2d at 245; *Zumot*, 2021 IL App (1st) 191743, ¶ 29. Finally, *Williams* noted that the defendant's offenses were planned and calculated, and they belied the argument that he acted impulsively due to an immature brain. *Williams*, 2021 IL App (1st) 190535, ¶¶ 32, 36. We cannot say the same here where the deaths that resulted appeared to be the product of impulse in the heat of the moment rather than planned, calculated killings.

¶ 45    There are also additional concerns in a case like this, not addressed by *Williams*, that would make it particularly unreasonable to expect defendant to allege facts regarding his own brain development or emotional maturity at the time of the offenses.

¶ 46    Defendant was sentenced for his offenses in 1996, predating *Miller* by approximately 16 years, and predating the factors enumerated in *People v. Holman* by about 21 years. As a result, the record could not possibly contain the sort of analysis contemplated by *Holman*, or account for the research that formed the basis of *Miller*. *People v. Holman*, 2017 IL 120655, ¶¶ 43-44; *Miller*, 567 U.S. at 471-72. Thus, it makes sense that the record would not contain an objective accounting of defendant's maturity or development from which defendant could draw. Indeed, at sentencing, defense counsel's argument was aimed entirely at saving defendant from the death penalty. As defense counsel conceded, the only other possible sentence was mandatory life, so there was little incentive to more fully develop issues about defendant's substance abuse that might have lowered his functional age.

¶ 47    From there, it would seem an impossible task to expect an incarcerated defendant in a case such as this to supply evidence on his own as to his brain development at the time of the offense in his first-stage petition. Do we expect him to hire a neurologist, neuropsychologist, neurobiologist, or some other expert from the confines of an Illinois correctional facility to supply him with facts to allege? There is no mechanism that exists that would allow an incarcerated, indigent defendant to obtain such evidence. In a case like the one at bar, there is no way a defendant would be able to realistically plead facts about how drugs and alcohol affected his brain maturity, or how his brain at the age of 21 was still more like that of a juvenile. So unless we wish to encourage *pro se* defendants to make hollow, *pro forma* factual allegations for the sole purpose of surviving the first stage, insisting on this sort of pleading goes beyond the "gist" standard.

¶ 48    At this stage, where defendant is only required to put forth the gist of a claim, the broad factual allegations he makes are enough to get his foot in the door. His factual allegations about brain development for young adults and that young adults are more like juveniles, which would have encompassed him at the time of the offense, meet the minimum threshold of being neither fantastic nor delusional. *Hodges*, 234 Ill. 2d at 17. He must only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Thomas*, 2014 IL App (2d) 121001, ¶ 48. Perhaps, with the guiding hand of counsel, he will be able to marshal additional facts to survive second-stage proceedings. Perhaps not. But that is a debate for second-stage proceedings and has no bearing here. Accordingly, we hold that defendant has stated a gist of a constitutional claim sufficient to advance to second-stage proceedings.

¶ 49                                  III. CONCLUSION

¶ 50    For the foregoing reasons, we reverse the judgment of the trial court and remand for second-stage post-conviction proceedings.

¶ 51    Reversed and remanded.