2023 IL App (1st) 221309-U

No. 1-22-1309

Order filed August 30, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 97 CR 25447 |
| | ) | |
| RANDALL JARRETT, | ) | Honorable |
| | ) | Kenneth J. Wadas |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE R. VAN TINE delivered the judgment of the court.
Presiding Justice McBride and Justice D. B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition because his life sentence does not violate the proportionate penalties clause of the Illinois Constitution under *Miller v. Alabama*, 567 U.S. 460 (2012), and related caselaw. Defendant was 24 years old at the time of the offense, therefore, *Miller* and its progeny do not apply to him.

¶ 2     Defendant Randall Jarrett appeals the trial court's denial of his motion for leave to file a

successive petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West

2020)). Defendant's proposed successive postconviction petition argues that his life sentence for

first-degree murder violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012) and related authority holding that juveniles and certain young adults cannot be sentenced to life in prison unless the sentencing court considered factors regarding youthful behavior and brain development. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                          A. Trial, Sentencing, and Direct Appeal

¶ 5     Defendant and his uncle, David Jarrett, were charged with three counts of first-degree murder (720 ILCS 5/9-1(a)(1), (2), (3) (West 1996)) and one count of armed robbery with a dangerous weapon (720 ILCS 5/18-2 (West 1996)) arising out of their fatal attack on Herman Bailey on September 2, 1997. As defendant only challenges the trial court's denial of leave to file a successive postconviction petition attacking his life sentence, we recite only those facts necessary to decide this appeal.

¶ 6     The evidence at defendant's 2003 bench trial established that, on September 2, 1997, defendant and his uncle, David, drove to the office of David's former boss, Herman Bailey, to rob him. Defendant struck Bailey in the head with a hammer and David continued striking Bailey until his head was "caved in." David took money from Bailey's pockets and desk drawer, then produced a knife. Defendant went outside and, several minutes later, David emerged, covered in blood. Defendant and his uncle split the proceeds of the robbery, threw the knife out of defendant's car window, buried the hammer, burned their clothes, and disposed of defendant's license plate. Police arrested defendant and, on September 4, 1997, he provided a statement to an Assistant State's Attorney describing the events set out above, which was entered into evidence. Defendant's

statement also indicated that he was 24 years old and that his date of birth is April 4, 1973. In addition, defendant led police to his car's license plate and the ashes from his and David's burnt clothing. The trial court found defendant guilty on all counts based on accountability and felony murder.

¶ 7    Prior to sentencing, the parties litigated defendant's alleged intellectual disability because the State indicated that it would seek the death penalty. Dr. William Brantley of the Alabama Department of Corrections testified that defendant scored a 75 on an intelligence quotient (IQ) test in 1996, which indicated that he was borderline intellectually disabled. In 2003, Cook County Forensic Clinical Services psychologist Timothy Cummings measured defendant's IQ at 85, which placed him in the "dull average range of intellectual potential" but indicated that he was not intellectually disabled. Forensic Clinical Services psychiatrist Carol Flippen also interviewed defendant in 2003 and concluded that he was not intellectually disabled. The court explained that its "gut feeling" was that defendant was not intellectually disabled but found that his IQ of 75 rendered him ineligible for the death penalty.

¶ 8    The presentence investigation report indicated, in relevant part, that defendant started drinking at age 15 and drank 12 to 24 beers per day until 1997. In aggravation, the State presented defendant's convictions for theft, burglary, and violation of probation in Alabama between 1993 and 1996. A victim impact statement from Bailey's sister described the devastating impact the murder had on her and Bailey's son. Several correctional officers testified regarding defendant's escape from an Alabama work release facility in August 1997, less than a month before Bailey's murder, and his behavioral issues in Cook County jail. In mitigation, defendant called correctional

officers and religious volunteers who testified to his cooperative and helpful behavior and his potential for rehabilitation. Defendant expressed regret in allocution.

¶ 9 After merging two of the murder counts, the court sentenced defendant to natural life on the remaining murder counts and 30 years on the armed robbery count.[1] The court described Bailey's murder as premeditated, cold-blooded, and the product of "exceptionally brutal or heinous behavior indicative of wanton cruelty." The court found that defendant was "not really [intellectually disabled]," but that his IQ of 75 made him ineligible for the death penalty.[2] Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 10 On direct appeal, defendant argued that his armed robbery and murder convictions violated the one-act, one-crime rule and that the trial court erred by not inquiring into his pretrial *pro se* claims of ineffective assistance of counsel. *People v. Jarrett*, No. 1-04-2025 (unpublished order under Supreme Court Rule 23). This court vacated one of defendant's murder convictions, but otherwise affirmed. *Id.*

¶ 11                           B. Postconviction Proceedings

¶ 12 In 2017, defendant filed his initial *pro se* postconviction petition. Relevant here, defendant argued that his life sentence violated the eighth amendment and the proportionate penalties clause because (1) he was intellectually disabled and (2) developing neuroscience indicated that he was immature and juvenile-like when he committed the offense at the age of 24. Defendant contended

---

[1] The record is somewhat unclear about whether the 30-year armed robbery sentence is concurrent with or consecutive to the natural life sentences for murder. However, that inconsistency does not affect our resolution of this appeal. There is no dispute that defendant has been sentenced to life in prison.

[2] Several documents in this case, including defendant's *pro se* filings, use the terms "mentally retarded" or "mental retardation." Instead, we use the term "intellectually disabled." See *People v. Coty*, 2018 IL App (1st) 162383, ¶ 1 n. 1 (reversed on other grounds in *People v. Coty*, 2020 IL 123972).

that he was juvenile-like because of his relatively low IQ.[3] In support of these arguments, defendant cited *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the eighth amendment prohibits executions of intellectually disabled individuals), *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the eighth amendment prohibits executions of juveniles), and *Miller*, which holds that the eighth amendment prohibits mandatory life sentences without parole for juvenile offenders.

¶ 13    The trial court dismissed defendant's initial postconviction petition. The court concluded that defendant's IQ of 75 precluded only the death penalty, not a life sentence, and that it diligently analyzed defendant's fitness for a life sentence. The court also found that *Miller* did not apply to defendant because he was 24 years old, not a juvenile, at the time of the offense. Defendant appealed and this court affirmed. *People v. Jarret*, 2020 IL App (1st) 180266-U, ¶ 2. This court held that defendant failed to provide an adequate record of sentencing proceedings, so it could not determine what factors the trial court considered. *Id.* ¶¶ 13-14. In addition, this court found that defendant provided no factual support for his claim that he was intellectually disabled. *Id.* ¶¶ 15-16.

¶ 14    In March 2021, defendant filed a *pro se* motion for leave to file a successive postconviction petition. He contended that, under *Miller* and related caselaw, his natural life sentence "imposed on a 24 year old emerging adult with an IQ of 75 without consideration of his youth and its attendant characteristics" violated the proportionate penalties clause. Defendant proceeded under

---

[3] Throughout postconviction proceedings, defendant has argued that, at age 24, he was equivalent to a juvenile *because of* his relatively low IQ. Our supreme court has rejected equating youth with intellectual disability because the characteristics of youth fade over time, whereas intellectual disability tends to be lifelong and unchanging. *Coty*, 2020 IL 123972, ¶¶ 39-40. Intellectual disability may be a mitigating factor, and youth may be a mitigating factor, but an adult defendant cannot argue that he qualifies as a juvenile for sentencing purposes because he is intellectually disabled.

the "cause-and-prejudice" test for filing a successive postconviction petition. As cause, defendant relied on scientific studies and caselaw that did not exist when he filed his initial postconviction petition in 2017. In support of prejudice, defendant argued that the trial court passed sentence without considering his youthful characteristics at the time of the offense. Defendant's proposed successive petition argued that, although he was 24 at the time of the offense, he was intellectually equivalent to a juvenile due to his IQ of 75, his traumatic upbringing, including physical and sexual abuse, his alcohol and drug addiction as a teenager, and his older uncle's "familial pressure" on him. He also contended that he had demonstrated rehabilitative potential while in prison.

¶ 15    Defendant attached voluminous exhibits to his petition, including articles discussing young adult brain development, his codefendant uncle's affidavit attesting that defendant did not know that his uncle planned to kill Bailey and thought they were only going to rob him, his and his brother's affidavits describing his difficult childhood, many exhibits describing his religious activities and education in prison, and letters from correctional officers attesting to his good behavior.

¶ 16    In April 2021, defendant filed a *pro se* supplement to his proposed successive petition. He argued that the attorney who reviewed his initial postconviction petition rendered unreasonable assistance by refusing to file the record of sentencing proceedings, which caused this court to affirm the dismissal of defendant's initial petition.

¶ 17    In June 2021, defendant filed a *pro se* petition to vacate his sentence pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)), which raised essentially the same arguments as his successive postconviction petition but focused on the trial court's alleged refusal to accept that defendant was intellectually disabled.

¶ 18     The trial court denied all three of defendant's 2021 filings. Relevant here, the court denied defendant leave to file a successive postconviction petition because no Illinois caselaw "supported[ed] the proposition that [defendant], a 24-year-old with a purported intellectual disability, was entitled to *Miller* considerations at sentencing." The court also rejected defendant's suggestion that "his intellectual disability ma[de] him similar to a juvenile or young adult," citing *Coty*. Finally, the court concluded that defendant failed to establish that his life sentence shocked the moral conscience given how "serious and violent" Bailey's murder was.

¶ 19     Defendant timely appealed.

¶ 20                              II. ANALYSIS

¶ 21     On appeal, defendant argues that the trial court erred in denying him leave to file a successive postconviction petition. Defendant contends that, under the proportionate penalties clause of the Illinois Constitution, *Miller*, and related caselaw, he can raise an as-applied challenge to his natural life sentence because the trial court failed to consider aspects of his character and background that made him more like a juvenile than an adult at the time of the offense. Specifically, defendant points to his alcohol dependency, below-average IQ, traumatic upbringing, and susceptibility to his uncle's influence as factors that made him akin to a juvenile in 1997, even though he was 24 years old at the time. He also contends that his rehabilitation, which occurred after he turned 26, shows that he was still maturing when he was 24.

¶ 22     As an initial matter, we note that defendant raised three claims in his 2021 filings: (1) his *Miller*-based claim that his life sentence violates the proportionate penalties clause because the trial court did not consider his juvenile-like characteristics; (2) his claim that the trial court ignored his intellectual disability at sentencing; and (3) his claim that postconviction counsel rendered

unreasonable assistance. However, defendant's briefs only advance his *Miller*-based claim. Defendant's claim of unreasonable assistance of postconviction counsel is folded into the cause prong of the cause-and-prejudice test for filing a successive postconviction petition. His reply brief confirms that he "is not making any claim that his sentence is unconstitutional because of his intellectual disabilities." Accordingly, defendant's *Miller*-based claim is the only claim that we will address.

¶ 23   The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a procedure by which a defendant can pursue a claim that his conviction or sentence was based on a substantial denial of his constitutional rights. *People v. Boykins*, 2017 IL 121365, ¶ 9. Its purpose "is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001).

¶ 24   Generally, a defendant may only file one postconviction petition, and filing multiple petitions is " 'highly disfavored.' " *People v. Simms*, 2018 IL 122378, ¶ 38 (quoting *People v. Bailey*, 2017 IL 121450, ¶ 39). However, a defendant may file a successive postconviction petition where he asserts "cause and prejudice" for not raising the claim earlier. *People v. Davis*, 2014 IL 115595, ¶ 14; 725 ILCS 5/122-1(f) (West 2020). "Cause" means an objective, external factor that impeded the defendant's ability to raise the claim in an earlier proceeding. *Davis*, 2014 IL 115595, ¶ 14. "Prejudice" means a constitutional error that "so infected the entire trial that the resulting conviction or sentence violates due process." *Id.* A defendant must satisfy both prongs to prevail. *Id.* A court should make cause-and-prejudice determinations based on the pleadings. *People v. Smith*, 2014 IL 115946, ¶ 33. The court should deny leave to file a successive postconviction

petition when it is clear the defendant's claims fail as a matter of law or where the successive petition and supporting documentation does not justify further proceedings. *Id.* ¶ 35. We review a trial court's denial of leave to file a successive postconviction petition *de novo* (*Bailey*, 2017 IL 121450, ¶ 13), meaning that we perform the same analysis as the trial court (*People v. Glinsey*, 2021 IL App (1st) 191145, ¶ 35).

¶ 25    In *Miller*, the United States Supreme Court held that a mandatory life sentence imposed on a juvenile offender violates the eighth amendment because it prevents the sentencing court from considering the mitigating aspects of youth; namely, immaturity, impulsivity, and vulnerability to negative influences. *Miller*, 567 U.S. at 471-80. The *Miller* Court based its reasoning on " 'developments in psychology and brain science continu[ing] to show fundamental differences between juvenile and adult minds' – for example, in 'parts of the brain involved in behavior control.' " *Id.* at 471-72 (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). Illinois courts have extended *Miller* to any life sentence imposed on a juvenile defendant. *People v. Robinson*, 2021 IL App (1st) 192289, ¶ 42. That is, before imposing a life sentence on a juvenile defendant, a court must consider "youth and its attendant characteristics." *Id.*

¶ 26    A defendant who was 18 or older at the time of the offense is an adult, not a juvenile, and cannot raise a *Miller* claim asserting an eighth amendment challenge to a life sentence. *People v. Harris*, 2018 IL 121932, ¶¶ 58-61. However, Illinois courts allow a defendant who was between 18 and 21 at the time of the offense to raise an as-applied *Miller* challenge to a life sentence under the proportionate penalties clause of the Illinois Constitution. *Robinson*, 2021 IL App (1st) 192289, ¶ 48. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

citizenship." Ill. Const. 1970, art. 1, § 11. The proportionate penalties clause extends greater protections than the eighth amendment. *Robinson*, 2021 IL App (1st) 192289, ¶ 46. A defendant's sentence violates the proportionate penalties clause if it is " 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Id.* (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002)). " 'To determine whether a penalty shocks the moral sense of the community, we must consider objective evidence as well as the community's changing standard of moral decency.' " *Id.* (quoting *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008)).

¶ 27    We find that defendant cannot establish prejudice. Under current Illinois authority, *Miller* and its progeny do not apply to defendant because he was 24 years old at the time of the offense. The parties agree that defendant was 24 years old when he and his uncle robbed and murdered Herman Bailey. Defendant told an Assistant State's Attorney that he was 24 on the date of Bailey's murder and confirmed that his date of birth is April 4, 1973. Similarly, multiple documents in the record indicate that defendant's date of birth is April 4, 1973, meaning that he was 24 years old at the time of the offense on September 2, 1997.

¶ 28    Defendant cannot raise an as-applied *Miller* challenge to his life sentence under the proportionate penalties clause because he was older than 21 at the time of the offense. Illinois courts have declined to extend *Miller* principles to defendants who were 21 or older at the time of the offense.[4] *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 55 ("The vast majority of our cases have drawn a bright line at 21 years old in determining who qualifies as a young adult offender.") (Internal quotations omitted.). Moreover, this court has expressly rejected extending *Miller*-based

---

[4] As discussed below, there is one published Illinois decision that has extended *Miller* protections to a defendant older than 21, *People v. Savage*, 2020 IL App (1st) 173135.

protections under the proportionate penalties clause to a defendant who was 24 years old at the time of the offense. *Robinson*, 2021 IL App (1st) 192289, ¶ 48. (The "defendant was 24 years old at the time he committed the aggravated criminal sexual assault, which is well past both the juvenile cutoff for eighth amendment *Miller*-based claims and the 18-to-21-year-old group of defendants who have asserted as-applied *Miller*-based claims under the proportionate penalties clause."). Even if *Miller* and related decisions existed when defendant was sentenced, the trial court would have been under no obligation to follow them because they do not apply to defendant.

¶ 29    Defendant argues that his age of 24 at the time of the offense "falls within the age range of defendants who are considered youthful in Illinois," citing *People v. Clark*, 2023 IL 127273. In *Clark*, our supreme court affirmed the denial of a 24-year-old defendant's motion for leave to file a successive postconviction petition due to his failure to satisfy the cause-and-prejudice test, so *Clark* does not support the outcome that defendant seeks in this case. *Clark*, 2023 IL 127273, ¶¶ 88, 99. Nor does *Clark* extend *Miller* protections to 24-year-olds; our supreme court declined to decide that issue. *Id.* ¶ 88.

¶ 30    Defendant analogizes himself to the defendant in *People v. Savage*, 2020 IL App (1st) 173135, arguing that both he and Savage were in their 20s at the time of their respective offenses, struggled with substance abuse, and had below-average intellectual capabilities. Defendant relies on *Savage* because it is the only published decision that has extended *Miller* to a defendant over the age of 21. *People v. Buford*, 2023 IL App (1st) 201176, ¶ 47 (citing *People v. Guerrero*, 2022 IL App (1st) 210400, ¶ 29). However, *Savage* is an outlier and has not been cited with approval by most Illinois courts. *Guerrero*, 2022 IL App (1st) 210400, ¶ 29. Savage was 21 years and 7 months old when he committed first-degree murder, but this court allowed him to pursue an as-

applied *Miller* challenge to his *de facto* life sentence due to his drug addiction since the age of 9. *Savage*, 2020 IL App (1st) 173135, ¶¶ 67-80. *Savage* does not support extending *Miller* protections an additional 3 years to a 24-year-old such as defendant in this case.

¶ 31    Defendant also cites *People v. Crockett*, 2023 IL App (1st) 220128-U for the proposition that there is no maximum age for *Miller*-based claims under the proportionate penalties clause.[5] *Crockett*, 2023 IL App (1st) 220128-U, ¶ 33. *Crockett* is distinguishable for two reasons. First, *Crockett* was decided in the context of an initial postconviction petition, not a successive postconviction petition. *Id.* ¶ 11. The defendant in *Crockett* only had to "present an arguable claim" at the first stage of initial postconviction proceedings, and "it [was] arguable that *Miller* [could] apply to someone over the age of 21." *Id.* ¶¶ 31-32. By contrast, in this case, defendant must show that he was, in fact, prejudiced by the trial court's failure to follow *Miller* at sentencing. He has failed to make that showing because the great weight of authority indicates that *Miller* would not have applied to him at 24 years old. Second, the defendant in *Crockett* was 21 when he committed first-degree murder and armed robbery, not 24. *Id.* ¶ 38. *Crockett* does not stand for the proposition that a 24-year-old is a youthful, adolescent-like defendant to whom *Miller* applies. While *Clark*, *Savage*, and *Crockett* open the door to *Miller*-based claims by defendants aged 21 and slightly above, there is simply no legal authority in Illinois that extends such claims to 24-year-olds.

¶ 32    Defendant contends that scientific studies recognize that "young adults up to age 25 possess the transient characteristics of youth." That may be, but they do not provide legal authority for us to extend *Miller* protections up to the age of 25 when neither the legislature nor any Illinois court

---

[5] Although *Crockett* is an unpublished order pursuant to Supreme Court Rule 23, defendant properly cites it as persuasive authority because it was decided after January 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023).

has done so. We continue to take the view that any extension of *Miller* principles to defendants older than 21 "should be made by our legislature or our highest court." *People v. Rivera*, 2020 IL App (1st) 171430, ¶ 27; see also *Montanez*, 2022 IL App (1st) 191930, ¶ 56; *Guerrero*, 2022 IL App (1st) 210400, ¶ 32.

¶ 33    Finally, we are unpersuaded that the factors defendant cites as demonstrating his "youthfulness" at age 24 are, in fact, indicative of immaturity. Substance abuse is not unique to juveniles, many adults struggle with addiction. As explained above, under *Coty*, defendant cannot convert his IQ of 75 into juvenile status. Moreover, the record indicates that, in 1997, defendant assumed adult responsibilities in almost every area of his life. He had been married and divorced, raised four children, worked as a self-employed mechanic, and owned a car. Accordingly, we find that the trial court properly denied defendant leave to file a successive postconviction petition advancing a *Miller*-based challenge to his life sentence pursuant to the proportionate penalties clause.

¶ 34                                    III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the denial of defendant's motion for leave to file a successive postconviction petition.

¶ 36    Affirmed.