2022 IL App (1st) 210400

No. 1-21-0400

Third Division
July 27, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 12 CR 18726 (02) |
| | ) | |
| DANIEL GUERRERO, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | William Raines, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Burke and McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     In the instant appeal, defendant Daniel Guerrero challenges the trial court's decision

denying his postconviction petition at the first stage. This is the second time this defendant has

appealed to this court. In his prior appeal, which was a direct appeal, defendant argued (1) that

certain remarks made by the prosecutor during the State's rebuttal closing argument constituted

prosecutorial misconduct and (2) that his sentence is excessive when compared to the lesser

sentence of a codefendant. We affirmed his conviction and sentence. See *People v. Guerrero*, 2020 IL App (1st) 172156.

¶ 2 In this appeal, defendant argues that his postconviction petition established the gist of his claim that the imposition of a 45-year sentence for his crime of murder in the first degree violates the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. 1, § 11) as applied to him. The trial court dismissed defendant's postconviction petition. For the following reasons, we affirm the trial court's decision.

¶ 3                                                       BACKGROUND

¶ 4 The State's evidence at trial established that, on May 29, 2010, at midnight, a group of men, who belonged to the same gang, approached two men on a street because one of the two men was wearing a red shirt, which was the color of a rival gang. One of the two men, Mario Gallegos, was able to escape, and he testified at trial as an eyewitness. The other man, Alan Oliva, who was wearing the red shirt, was beaten and stabbed to death. Gallegos identified defendant as the first person to strike the victim. Gallegos testified that defendant swung a baseball bat at the victim, thereby knocking the victim to the ground, whereupon the other men beat and stabbed the victim until he stopped moving. The victim later died from his wounds. Defendant was 22 years and two months old at the time of the killing.

¶ 5 On April 6, 2017, defendant was convicted of gunrunning. See 720 ILCS 5/24-3A(a) (West 2014) ("A person commits gunrunning when he or she transfers 3 or more firearms in violation of any of the paragraphs of Section 23-4 of this Code."). The underlying events giving rise to this conviction occurred in April 2012, almost two years after the killing of Oliva. Defendant

was sentenced to seven years and seven months with the Illinois Department of Corrections (IDOC) for this conviction.

¶ 6 Defendant's murder trial was held about two months after defendant's conviction for gunrunning. On June 8, 2017, a jury found defendant guilty of first degree murder. On July 11, 2017, the trial court, after considering the aggravating and mitigating factors, sentenced defendant to 45 years with the IDOC. The trial court considered the defendant's criminal history, his social history, his education, his background, his family history, and his physical health. More specifically, it considered defendant's participation in gang involvement in aggravation, as well as defendant's role as "leader of the pack", as he was armed with the bat that struck the first blow, allowing the others to continue the attack. The court also considered in aggravation the fact that defendant continued being involved in gang activity even after the murder, as evidenced by the gunrunning conviction just a couple months prior to the murder trial. In sum, "the defendant's primary roll [*sic*] in this incident, this senseless killing of certainly an innocent individual Mr. Oliva, who had a bright future in front of him require[d] [in] the Court's discretion a sentence greater than the minimum, and greater commensurate with the other individuals based on their level of participation."

¶ 7 On August 10, 2017, defendant filed a notice of appeal.[1] On June 4, 2020, this court issued its decision on defendant's direct appeal. We held that the State's remarks during the trial did not constitute error and certainly did not rise to the level of clear and obvious error as required

---

[1]Our earlier opinion in this matter (*Guerrero*, 2020 IL App (1st) 172156) incorrectly stated that the notice of appeal was filed on July 11, 2017.

for reversal under the plain error doctrine. We also held that defendant's sentence was not excessive, as defendant was not similarly situated as his codefendants because he was the leader of the pack and, after the murder, was convicted of another crime.

¶ 8    On December 30, 2020, defendant filed his *pro se* postconviction petition alleging that (1) his 45-year sentence was unconstitutional under the eighth amendment (U.S. Const., amend. VIII), (2) his trial counsel was ineffective in failing to object to the State's use of certain testimony, and (3) the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).[2] On March 2, 2021, the trial court issued a written order summarily dismissing the petition as frivolous and without merit. Subsequently, defendant filed a notice of appeal that substantially complied with Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017), which sets forth notice requirements for incarcerated individuals filing documents with a court.[3]

---

[2]Rule 431(b) reads as follows:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

[3]Rule 12(b)(6) reads as follows:

"Manner of proof. Service is proved:

        * * *

*** in case of service by mail by a self-represented litigant residing in a correctional facility, by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017).

In this case, defendant did not note the time of the deposit. However, defendant's failure to adhere to this formality is not fatal to the sufficiency of his notice. See, *e.g.*, *People v. Smith*, 228 Ill. 2d 95, 105 (2008); *People v. Humphrey*, 2020 IL App (1st) 172837, ¶¶ 18-21.

¶ 9                                                      ANALYSIS

¶ 10          On appeal, defendant argues that his 45-year sentence for his murder conviction violates the Illinois Constitution's proportionate penalties clause as applied to him.

¶ 11                                          I. Standard of Review

¶ 12          Defendant's petition was dismissed at the first stage of postconviction proceedings. " 'At the first stage of postconviction [proceedings] there are no hearings, no arguments, and no introduction of evidence.' " *People v. Savage*, 2020 IL App (1st) 173135, ¶ 48 (quoting *People v. Johnson*, 2018 IL 122227, ¶ 21). " 'Instead, there is only a pleading, the postconviction petition, that the circuit court must independently consider to determine whether it is frivolous or patently without merit.' " *Savage*, 2020 IL App (1st) 173135, ¶ 48 (quoting *Johnson*, 2018 IL 122227, ¶ 21).

¶ 13          "Where the issue on review is limited to the sufficiency of the allegations in a postconviction petition, there is little justification for affording deference to the circuit court's decision." *People v. Robinson*, 2020 IL 123849, ¶ 39. "Given that no factual findings or credibility determinations are required at the pleading stage of postconviction proceedings, a reviewing court is as capable as the circuit court of determining whether a petition and supporting documents contain adequate allegations." *Robinson*, 2020 IL 123849, ¶ 39. Thus, a reviewing court's standard of review is *de novo*. *Savage*, 2020 IL App (1st) 173135, ¶ 49. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 107.

¶ 14                                     II. Postconviction Hearing Act

¶ 15     Defendant seeks relief under the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)).

¶ 16     The Act provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. It is not a substitute for an appeal but, rather, a collateral proceeding that attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 17     The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 18     At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 19     If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as fact finder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 20     In the case at bar, defendant appeals the trial court's order summarily dismissing his postconviction petition as frivolous and without merit at the first stage. He argues that his postconviction petition established the gist of a claim that his 45-year sentence, of which he must serve 100% under the truth-in-sentencing provisions of the Unified Code of Corrections (730 ILCS 5/3-6-3 (West 2014)), violates the Illinois constitution's proportionate penalties clause "in light of recent changes in the research and jurisprudence surrounding emerging adults." The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11.

¶ 21     As noted above, a postconviction petition may be dismissed at the first stage only if it is frivolous or patently meritless. *Domagala*, 2013 IL 113688, ¶ 32. This is admittedly a low threshold. *People v. Allen*, 2015 IL 113135, ¶ 24. However, "[t]his low threshold does not excuse the *pro se* petitioner from providing factual support for his claims; he must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *Allen*, 2015 IL 113135, ¶ 24 (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). Moreover, a *pro se* petition seeking postconviction relief may be dismissed "if the petition has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).

¶ 22     As mentioned above, defendant was just over 22 years old when he murdered Oliva. Our supreme court's decision in *People v. Harris*, 2018 IL 121932, ¶ 61, foreclosed the possibility

7

of offenders aged 18 and over to rely on the eighth amendment's prohibition against cruel and unusual punishment in challenging the length of their prison sentences. However, the *Harris* court reiterated its earlier decision in *People v. Thompson*, 2015 IL 118151, which held that a defendant is not necessarily foreclosed from raising a constitutional claim in another proceeding, such as this Act. *Harris*, 2018 IL 121932, ¶ 48 (citing *Thompson*, 2015 IL 118151, ¶ 44). Since the *Harris* decision, Illinois courts have considered the sentencing mitigation claims of incarcerated offenders aged 18 and older under the proportionate penalties clause of the Illinois Constitution rather than the eighth amendment. *E.g.*, *People v. Minniefield*, 2020 IL App (1st) 170541, ¶¶ 37-38 (considering a 19-year-old defendant's as-applied sentencing claim under the proportionate penalties clause rather than the eighth amendment); *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 51 (18-year-old defendant); *People v. Johnson*, 2020 IL App (1st) 171362, ¶¶ 13-31 (19-year-old defendant); *Savage*, 2020 IL App (1st) 173135, ¶ 61 (22-year-old defendant); *People v. Ross*, 2020 IL App (1st) 171202, ¶ 20 (19-year-old defendant).

¶ 23    At this first stage, we must consider whether defendant's claim has an arguable basis in law or fact. Defendant has cited only one legal precedent in which this court allowed a defendant aged 21 or over to advance from the first to the second stage of proceedings under the Act.[4] We therefore look to that decision, and all other relevant decisions, for guidance in the case at bar.

---

[4]Moreover, defendant fails to explain how his case is different from the litany of decisions in which we have not allowed claims by petitioners aged 21 and over to go forward. See, *e.g.*, *People v.*

¶ 24        In *Savage*, we considered the postconviction appeal of a defendant (Savage) who was 22 years old at the time he committed the murder and was sentenced to 85 years with IDOC. *Savage*, 2020 IL App (1st) 173135, ¶¶ 2, 67. In that case, the State's evidence established that Savage had shot two men, killing one of them, in a bungled attempt to rob one of the men of drugs. *Savage*, 2020 IL App (1st) 173135, ¶ 15. In his petition, Savage argued that his life-long drug addiction from the age of nine made him the functional equivalent of a younger man. *Savage*, 2020 IL App (1st) 173135, ¶ 67. This allegation was corroborated by a hospital discharge report from when Savage was 15 years old, which indicated that Savage had begun using drugs at the age of nine. *Savage*, 2020 IL App (1st) 173135, ¶ 72. Savage further alleged that he was using drugs every day at the time of the offense, and that he was attempting to rob a drug house at the time of the murder. *Savage*, 2020 IL App (1st) 173135, ¶ 71. He alleged that his long-term addiction from a young age left him susceptible to peer pressure and more volatile in emotionally charged settings. *Savage*, 2020 IL App (1st) 173135, ¶ 71. Savage also averred to having " 'conquered [his] drug habit,' " as corroborated by never having tested positive for drugs while in prison, and was therefore a candidate for rehabilitation. *Savage*, 2020 IL App (1st) 173135, ¶ 9. Finally, nothing in the facts of that case indicated that Savage committed crimes after the murder, and he contended that his drug use stunted his brain development and rendered his maturity level similar to that of a juvenile. On these facts and

---

*Williams*, 2021 IL App (1st) 190535, (22-year-old defendant); *People v. Green*, 2022 IL App (1st) 200749 (21-year-old defendant); *People v. Suggs*, 2020 IL App (2d) 170632 (23-year-old defendant); *People v. Rivera*, 2020 IL App (1st) 171430 (23-year-old defendant); *Humphrey*, 2020 IL App (1st) 172837 (21-year-old defendant); and *People v. Robinson*, 2021 IL App (1st) 192289 (24-year-old defendant).

allegations, we allowed Savage to proceed to the second stage of proceedings under the Act. No later opinion has allowed a person aged 21 or over to proceed to the second stage of proceedings under the Act.

¶ 25     In this case, there is nothing in the record to indicate that defendant's upbringing would have somehow increased his propensity for, or even explained his participation in, a gang lifestyle. There is nothing to show that his cognitive abilities were somehow affected or lessened by the circumstances of his upbringing. Rather, he was described as a smart individual, which would suggest that defendant knew what he was doing when he murdered Oliva.

¶ 26     Apart from citing literature on the cognitive development of emerging adults in their early twenties, defendant here does not include any additional facts in support of his contention that his sentence violates his rights under our constitution's proportionate penalties clause. In other words, he does not allege that his cognitive development was that of a juvenile at the time of his crimes.

¶ 27     The case at bar is readily distinguishable from *Savage*. There is no indication that defendant's upbringing caused or influenced him to kill Oliva. He was raised by both parents and had a loving sister who testified on his behalf. There is no indication that he was addicted to any substances that may have influenced his behavior, whereas Savage had been allegedly using hard drugs on a regular basis—including cocaine, crack cocaine, and PCP—since the age of nine, which, according to Savage, altered his behavior significantly. Moreover, there is no indication that defendant was in any way cognitively impaired at the time that he killed

Oliva. Savage, on the other hand, had well-documented allegations indicating serious mental health problems, as evidenced by a four-month stay in a psychiatric hospital during his teenage years. There is also no palpable indication that defendant felt any sense of remorse or willingness to rehabilitate, as he committed at least one serious offense after the murder of Oliva—gunrunning, a gang-related activity. In fact, in allocution, he indicated he was not guilty of the offense, contrary to eyewitness testimony. Savage, on the other hand, alleged to have conquered his drug habit while serving his sentence, as evidenced by his repeated negative drug tests.

¶ 28        Based on the foregoing, there can be no dispute that defendant was a mature individual, perhaps even older than his chronological years, at the time he murdered Oliva. He knew exactly what he was doing, and he knew the potential consequences of his actions—not only on his own life but on the lives of the surviving family members of Oliva. There is nothing in the record to suggest that defendant's cognitive age was below that of his chronological age. He continued to be involved in gang activity after he killed Oliva. Defendant's petition is wholly devoid of anything—fact or allegation—that could support his constitutional claim that the sentence which was imposed on him was disproportionate.

¶ 29        The *Savage* decision was published on September 30, 2020, at a time when the law on this subject was still in the infant stage, and that decision appears to be the only reported decision of this court extending *Miller*-based sentencing protections (see *Miller v. Alabama*, 567 U.S. 460 (2012)) to a defendant over 21 years of age. Numerous cases decided after *Savage* have either distinguished it or rejected its reasoning entirely. See, *e.g.*, *People v. Montanez*, 2022 IL

App (1st) 191930, ¶¶ 57-62; *People v. Gholston*, 2021 IL App (1st) 200188-U, ¶ 34; *People v. Kruger*, 2021 IL App (4th) 190687, ¶¶ 30-31; *People v. Williams*, 2021 IL App (1st) 190535, ¶¶ 28-32. This court, in cases decided after *Savage*, has drawn a line for "young adult offenders" ending at 21 years of age. See, *e.g.*, *People v. Green*, 2022 IL App (1st) 200749, ¶ 42; *People v. Humphrey*, 2020 IL App (1st) 172837, ¶ 33 ("[I]ndividuals who are 21 years or older when they commit an offense are adults for purposes of a *Miller* claim."); *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 35 ("[S]ociety has drawn lines at ages 18 and 21 for various purposes. Defendant cannot point to any line, societal, legal, or penological, that is older than 21 years" other than *Savage*.).

¶ 30    We recognize that research has found that brain development can continue into a person's mid-twenties, and we really do not know what effect, if any, that has on an offender's reasoning process. However, both our supreme court and the United States Supreme Court recognize that a court must determine whether an offender is a juvenile offender or an adult offender for sentencing purposes. The United States Supreme Court chose to draw the line, under the eighth amendment, at 18 years old because that "is the point where society draws the line for many purposes between childhood and adulthood." *Roper v. Simmons*, 543 U.S. 551, 574 (2005).

¶ 31    Our supreme court recognized the line drawn by the United States Supreme Court but has suggested that defendants over the age of 18 may have cognizable *Miller*-based sentencing claims under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Harris*, 2018 IL 121932, ¶¶ 48, 60. Recently, in *People v. House*, 2021 IL 125124, the supreme court remanded for further second-stage proceedings under the Act where the 19-

year-old defendant raised a *Miller*-based challenge to his sentence. The *House* court did not determine that the defendant's sentence was unconstitutional but found that the record was not adequately developed on the defendant's specific facts and circumstances to make such a determination. *House*, 2021 IL 125124, ¶¶ 29-32. Our supreme court has not yet drawn a definite age limit for *Miller*-based claims under the proportionate penalties clause. Nor has it found that offenders over the age of 18 are entitled to *Miller*-based sentencing protections. This does not imply, however, that there is no upper age limit for a defendant to pursue *Miller*-based sentencing protections. Notably, the defendant in *Harris* argued that eighth amendment *Miller* protections for juveniles should be applied to all "young adults under the age of 21." *Harris*, 2018 IL 121932, ¶ 53.

¶ 32    Although some cases have extended juvenile sentencing guidelines to offenders under 21 years old, if those same extensions are to be made to offenders over 21 years old, "it should be made by our legislature or our highest court." *People v. Rivera*, 2020 IL (1st) 171430, ¶ 27. As noted, our supreme court has not yet delineated a bright line age limitation for *Miller*-based protections, but the court has stated that the legislature is "better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly." *People v. Buffer*, 2019 IL 122327, ¶ 35. The legislature, in turn, has recently enacted several statutes indicating that it has determined that 21 years of age is the line between adults and juveniles for sentencing purposes.

¶ 33    For instance, section 5-4.5-115(b) of the Unified Code of Corrections provides for parole review, "after serving 20 years or more" of their sentence, for defendants who were under the

age of 21 when they committed first degree murder. See Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110); Pub. Act 101-288 (eff. Jan. 1, 2020) (renumbering 730 ILCS 5/5-4.5-110 to 730 ILCS 5/5-4.5-115). Furthermore "[i]n considering the factors affecting the release determination ***, the Prisoner Review Board panel shall consider the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." Pub. Act 101-288 (eff. Jan. 1, 2020) (renumbering 730 ILCS 5/5-4.5-110(j) to 730 ILCS 5/5-4.5-115(j)). These considerations mirror those identified by the Supreme Court in *Miller*. The Illinois legislature has also prohibited the sale of nicotine and tobacco products to persons under 21 (720 ILCS 675/1 (West 2020)), prohibited the sale of alcohol products to persons under 21 (235 ILCS 5/6-16 (West 2020)), and made possession of a firearm by those under the age of 21 an aggravating factor for aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2020)).

¶ 34    Finally, our supreme court has held that a sentence of 40 or more years imposed on a juvenile amounts to a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 40. Before sentencing a juvenile to life imprisonment without parole, the trial court must determine that the "defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *People v. Holman*, 2017 IL 120655, ¶ 46. In this case, defendant was not a juvenile at the time he murdered Oliva—he was 22 years and two months old. As discussed above, there is nothing in the record to support the notion that defendant's actual mental age was younger than his chronological age. However, even if we

14

were to treat defendant as a juvenile, his claim remains meritless. Defendant has submitted nothing to demonstrate that he is not permanently incorrigible. Defendant has not even *alleged* any facts that may indicate corrigibility. There is no indication that defendant has shown a willingness or ability to rehabilitate. To the contrary, the record shows that defendant has committed at least one serious offense after he murdered Oliva.

¶ 35                                    CONCLUSION

¶ 36        For the foregoing reasons, the trial court's summary dismissal of defendant's postconviction petition at the first stage is affirmed.

¶ 37        Affirmed.

---

*People v. Guerrero*, 2022 IL App (1st) 210400

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-18726(02); the Hon. William Raines, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Chan Woo Yoon, and Hannah Lazar Pieterse, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tasha-Marie Kelly, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People. |

---